Harry D. CASE, Appellant,

v.

Patsy K. WINTERS (Case), Appellee.

No. 7902.

Supreme Court of Alaska.

Sept. 28, 1984.

Homer L. Burrell, Anchorage, for appellant.

Roger E. Henderson and David Johnson, Houston & Henderson, Anchorage, for appellee.

## OPINION

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

PER CURIAM.

In this case, a default judgment in the amount of $19,960 was entered. Harry Case unsuccessfully sought Civil Rule 60(b) relief and appealed.

We reverse.

### I.

Appellant Harry Case (hereinafter "Harry") and Appellee Patsy (Case) Winters (hereinafter "Patsy") were granted an interlocutory divorce in 1973. Patsy was granted temporary custody of their seven-year-old daughter, Cathie, and Harry was ordered to pay $100 per month as temporary child support, which he regularly paid.

In 1976, a final decree was entered awarding custody to Harry.[1] There was no provision for child support from Patsy. However, Cathie did not want to stay with her father and within a short time after the final decree, she returned to stay with her mother. Legal custody remained with her father.

Beginning with Cathie's return in 1977, Patsy and her husband provided the sole support for her. Patsy never made any request to Harry that he contribute to Cathie's support.

Nearly four years later, in December 1981, Patsy filed a motion in the divorce case, No. 73–2860, to change legal custody to her and to obtain a judgment for past child support.[2] Attorney John Hellenthal entered an appearance for Harry. Two affidavits were filed in opposition to Patsy's motion.

In August 1982, Patsy filed a complaint in No. 82–6747, naming Harry as a defendant and seeking "an award of damages representing unpaid support payments" based on his unspecified "legal and equitable obligations." The complaint was personally served on Harry.

At the same time, Patsy moved to consolidate No. 82–6747 with the existing divorce case, No. 73–2860.

Hellenthal had not yet appeared as attorney of record in No. 82–6747. It is uncontested that Hellenthal later contacted Patsy's attorney and requested an extension of time to answer the complaint, which was granted. When the extension expired, Patsy's attorney wrote to Hellenthal and notified him that "I intend to apply for default." Although Hellenthal did not recall receiving the letter, it was in his file.

On November 15, Patsy requested the clerk to enter Harry's default. *See* Civil Rule 55(a). Default was entered on No-

---

1. The decree was signed by Judge Singleton on September 7, 1977, *nunc pro tunc* to June 16, 1976.

2. The motion also sought to enforce the property division ordered in the divorce decree.

vember 23.[3] Thereafter, a consolidation order was entered on December 14, 1982. There is no certification in the record that a copy of this order was served on either party or his attorney. *See* Civil Rule 5(a).

A hearing on damages was held on January 10, 1983. There is no indication in the record in this court that Hellenthal or his client was notified of the hearing.[4] At the hearing Patsy's husband testified that the family expenses ran between $2,000 to $2,500 per month in 1976, and around $3,000 per month at the time of the hearing. The household had seven people through 1980, and four thereafter. The court found Harry liable for $300 per month as "a reasonable and equitable contribution for [Cathie's] maintenance and support ... from each of her natural parents." Judgment was entered accordingly.

On April 4, Harry filed a motion for relief from the judgment pursuant to Civil Rule 60(b)(1). He submitted an affidavit from Hellenthal, who admits failing to file a timely response to the complaint in No. 82–6747.

The motion for relief was denied and Harry appealed.

## II.

■ Harry's primary argument on appeal is that Hellenthal was not notified of the application for a default judgment, or the default hearing.[5]

Patsy points out that Hellenthal admits that his client brought him the complaint and that the letter from Patsy's attorney notifying him of an intent to apply for default was in Hellenthal's file. Patsy contends that Harry, having been found in default, was not entitled to service of any pleadings. We disagree.

Up until the time of the consolidation order (December 14, 1982), neither Harry nor attorney Hellenthal was entitled to service of the prior entry of default because "no service need be made on parties in default for failure to appear...." Civil Rule 5(a).[6]

However, upon entry of the consolidation order on December 14, 1982, Hellenthal as the attorney of record in case No. 73–2860 now became an active participant in this consolidated action, which included case No. 82–6747. Once these cases were consolidated, all pleadings and papers filed with the Court must be served on all parties or their representatives in any subsequent proceedings. Civil Rule 5(a). Thus, Hellenthal should have been served with the consolidation order.

More importantly, he was also entitled to service of "written notice of the application

**3.** According to the clerk's certificate, a copy of this default was sent to the "Attorney(s) of Record." However, as of November 23, there was no attorney of record for Harry in No. 82–6747 and the two cases had not yet been consolidated.

**4.** According to Harry's current lawyer, there was no notice of the hearing in either the superior court file or Hellenthal's files.

**5.** Harry also argues that the failure to serve the motion for consolidation on Hellenthal, rather than merely on Harry, was error. This is a minor irregularity that does not warrant relief from judgment. *See Balchen v. Balchen,* 566 P.2d 1324 (Alaska 1977); *Hall v. Dorsey,* 596 S.W.2d 565 (Tex.Civ.App.1980).

**6.** Rule 5. Service and Filing of Pleadings and Other Papers.
(a) Service—When Required. *Every order* required by its terms to be served, *every pleading* subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, *and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties but no service need be made on parties in default for failure to appear* except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.

In an action begun by seizure of property, whether through arrest, attachment, garnishment or similar process, in which no person need be or is named as defendant, any service required to be made prior to the filing of an answer, claim, or appearance shall be made upon the person having custody or possession of the property at the time of its seizure. (Emphasis added).

for judgment [of default] at least 3 days prior to the hearing on such application." Civil Rule 55(c)(1).[7] No such notice was provided.

■ The notice provision of Civil Rule 55(c)(1) is intended to give the defendant an opportunity to argue to the *judge* that a default *judgment* should not be entered, notwithstanding the fact of the default. *See* 10 A. Wright, A. Miller and Kane, Federal Practice and Procedure, § 2685, at 423 (1983). The same reasoning applies to the requirement of notice of the hearing on damages, if there is to be one. *See* Civil Rule 55(c)(1).

■ Harry Case was impermissibly denied the opportunity to contest the entry of default judgment and the attendant determination of damages. He was entitled to service of notice from the date of the order of consolidation of the two cases, the former of which Hellenthal had appeared in as counsel of record. The lack of notice was fatally defective.

Accordingly, the judgment of default and the damage award shall be set aside. We REMAND to the superior court for a rehearing on this issue, notice of which shall be afforded to the party against whom default judgment is sought in a manner consistent with Civil Rule 55(c).[8]

COMPTON, Justice, with whom RABINOWITZ, Justice, joins, concurring.

I concur in the result the court reaches, but I disagree with its reasoning. My disagreement lies in the failure of the court to distinguish between the right of a party to be given notice, as required by Civil Rule 5(a), and the responsibility that attaches for failure to respond to a notice.

If I understand the court's holding, it is the fact of consolidation of two separate civil actions that is critical. Presumably the result would be the same whether or not Harry had authorized Mr. Hellenthal to act on his behalf in Civil Action No. 82–6747. Neither Harry nor the court cite any authority for this extraordinary proposi-

---

**7.** Civil Rule 55 states in part:

Rule 55. *Default.*

(a) *Entry.* When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter his default.

(b) *Judgment by the Clerk.* When the plaintiff's claim(s) against a defendant is for a sum certain or for a sum which can by computation be made certain, the clerk upon the request of the plaintiff and upon affidavit of the amount due shall enter default judgment for that amount, costs and attorney fees against the defendant, if he has been defaulted for failure to appear and if he is not an infant or incompetent person, and upon the proof required by Rule 73(c)(2).

(c) *Judgment by the Court.*

(1) In all other cases the party entitled to a default judgment shall apply to the court therefor.... *If the party against whom default judgment is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the

amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper.

(2) When application is made to the court for a default judgment, counsel shall file a memorandum of the default, showing when and against what parties it was entered and the pleadings to which no defense has been made.... If the party against whom default judgment is sought has appeared in the action or proceeding, the memorandum shall also indicate whether or not the record shows that notice has been served as required by paragraph (1) of this subdivision.

(3) If the amount of damages claimed in an application to the court for default judgment is unliquidated, the applicant may submit evidence by affidavit showing the amount of damages and if, under the provisions of paragraph (1) of this subdivision, notice of the application is necessary, the parties against whom judgment is sought may submit affidavits in opposition.

(Emphasis added).

**8.** We affirm the entry of default on the liability issue; however, our decision does not foreclose the superior court from reopening the liability question should it decide that meritorious defenses exist which warrant reconsideration.

tion, quite possibly because it does not exist.

As attorney of record for Harry in Civil Action No. 73–2860, Mr. Hellenthal was entitled to be served with all pleadings relating to that action, including those that resulted in its consolidation with Civil Action No. 82–6747. However, the consolidation of the separate civil actions for purposes of trial does not in and of itself mean that Mr. Hellenthal was authorized to act, or could be held responsible for failure to act, on behalf of Harry on issues raised in Civil Action No. 82–6747. If he was not authorized by Harry to act on Harry's behalf in Civil Action No. 82–6747, then of course neither he nor Harry are in any position to complain about whatever action was taken.

In setting aside the default judgment because Mr. Hellenthal did not receive notice of relief requested on issues raised in Civil Action No. 82–6747, the court necessarily implies that he was authorized to act on Harry's behalf in that case. Thus, implicit in the court's holding is a conclusion that an attorney who represents a client in one case may be held responsible for failing to act in any other cases which are later consolidated with it, irrespective of the attorney's authority in fact. Since the attorney may not have been authorized to act in the later cases, he acts—or fails to act—at his peril.

In my view, the correct answer to the question posed is that Harry made an entry of appearance through Mr. Hellenthal in Civil Action No. 82–6747 for the purpose of triggering the notice requirement found in Civil Rule 55(c)(1). According to the commentators, an "appearance" for purposes of the rule requires neither an answer nor a formal notice of appearance:

> [A] party may be deemed to have filed an appearance when there have been contacts between plaintiff and the defaulting party that indicate defaulting party intends to defend the suit.

. . . .

Failure to give the required notice is generally regarded by the courts as a serious procedural irregularity. [Footnotes omitted].

6 J. Moore, Moore's Federal Practice ¶ 55.-05[3], at 55–55 and –57 (1983). *See also* 10 A. Wright, A. Miller and Kane, Federal Practice and Procedure § 2686, at 432 (1983).

There is ample precedent for setting aside a default judgment entered where notice of the application for judgment is lacking, despite the lack of a formal appearance in the action, where contacts between the parties are sufficient to make it clear to the plaintiff that the defendant intends to contest the matter.

In *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder L.*, 432 F.2d 689 (D.C. Cir.1970), where the parties had communicated about possible out-of-court settlements, it was held that there had been an "appearance" for the purposes of Rule 55 even though the defendant's pleadings had not been properly filed. In arriving at this conclusion, the court noted that "[t]he policy underlying the modernization of federal procedure, namely, the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits, is central to this issue." *Id.* at 691. *See also Lutomski v. Panther Valley Coin Exchange*, 653 F.2d 270 (6th Cir.1981) (defendant's request for extensions of time indicated an intent to defend the lawsuit); *Charlton L. Davis & Co., P.C. v. Fedder Data Center*, 556 F.2d 308 (5th Cir.1977) (request for an extension of time by phone and letter indicated an attempt to defend the lawsuit); *Hutton v. Fisher*, 359 F.2d 913 (3rd Cir.1966) (request for an extension of time to answer complaint constituted "appearance"); *United States v. Melichar*, 56 F.R.D. 49 (E.D.Wis.1971) (participation in stipulations extending the time to answer constituted an "appearance" for the purposes of Rule 55).

Mr. Hellenthal requested an extension of time to answer the complaint in Civil Action No. 82–6747. That informal request was granted by Patsy's attorney. Thereafter, Patsy's attorney informed Mr. Hel-

lenthal that default would be applied for if an answer was not forthcoming. Although Mr. Hellenthal could not recall that communication, the letter was in his file. From these facts it seems clear that Harry intended to defend and therefore an appearance was entered on his behalf in the second proceeding, not merely because of the consolidation but because of an "appearance" to which legal significance attaches.

Accordingly, since Harry would be bound by the failure of Mr. Hellenthal to respond to a notice had it been given to him, he may complain about the lack of notice. The default judgment should be set aside.